UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

GARY LINFOOT, et al.  )
                      )
    Plaintiffs,       )
                      )
v.                    )   No. 3:09-0639
                      )   JUDGE HAYNES
MD HELICOPTERS, INC., et al.  )
                      )
    Defendants.       )

**MEMORANDUM**

Plaintiffs, Gary Linfoot and Marilyn Linfoot, Tennessee citizens, originally filed this action in the Circuit Court for Montgomery County, Tennessee against the Defendants: MD Helicopters, Inc. ("MDHI"), an Arizona corporation, L-3 Communications Corporation, a Delaware corporation, and Kamatics Corporation, a Connecticut corporation. Plaintiffs assert claims for negligence, breach of warranty and violation of the Tennessee Products Liability Act, Tenn. Code Ann § 29-28-101 et seq. Defendants unanimously consented to the removal of this the action under 28 U.S.C. § 1332(a), the federal diversity statute, without objection from Plaintiffs. Plaintiffs' complaint was later amended to include McDonnell Douglas Helicopter Company ("MDHC") as a defendant.

Plaintiffs' claims arise from the crash of a military helicopter, piloted by Plaintiff Gary Linfoot in Iraq. Plaintiffs allege that defects in the helicopter's driveshaft caused the helicopter to crash and that modifications to Gary Linfoot's seat and the addition of avionics equipment under the seat compromised the crashworthiness of the helicopter, exacerbating Linfoot's injuries.

1

Before the Court are the following motions: Defendant MDHC's motion for judgment on the pleadings (Docket Entry No. 60); MDHC's motion for summary judgment (Docket Entry No. 62); Defendant Kamatics Corporations's motion for summary judgment (Docket Entry No. 63); and Kamatics Corporations's motion for judgment on the pleadings (Docket Entry No. 68). In their motions for judgment on the pleadings, MDHC and Kamatics contend that Plaintiffs' claims should be dismissed as preempted by the "combatant activities" exception to the Federal Tort Claims Act ("FTCA"). In their motions for summary judgment, MDHC and Kamatics contend that Plaintiffs' claims are barred by the Tennessee Products Liability Act's statute of repose.

In response, Plaintiffs contend that the "combatant activities' exception under the FTCA is inapplicable here, and that material factual disputes exist on the choice of the appropriate state law to govern Plaintiffs' claims.

For the reasons set forth below, the Court concludes that MDHC's and Kamatics's motions for judgment on the pleadings should be denied without prejudice to renew after factual discovery of whether Plaintiff Gary Linfoot's use of the military's helicopter at issue was necessary to and in direct connection with combat activities in Iraq. The Court also concludes that MDHC's motion for summary judgment and Kamatics Corporation's motion for summary judgment should be denied without prejudice to renew after discovery to determine the appropriate governing state law for Plaintiff's claims under Tennessee's choice of principles.

## I. ANALYSIS OF THE AMENDED COMPLAINT

Plaintiff, Gary Linfoot, was a Chief Warrant Officer (CW4) and a member of the 160th Special Operations Aviation Regiment ("SOAR"), a United States Army unit assigned to Ft. Campbell, Tennessee. Plaintiff was deployed in Iraq as pilot in command of an AH-6M helicopter,

US Army tail number 23649, Manufacturer Serial Number 81-23649. (Docket Entry No. 31, Amended Complaint at ¶ 7). On or about the night of May 31, 2008, Plaintiff was on an undefined mission south of Baghdad when the helicopter's main driveshaft failed, causing an instantaneous and complete loss of drive to the helicopter's rotors and his helicopter crashed. Id. at ¶ 8.

Plaintiffs allege that the main driveshaft's failure was caused by the failure of the Kamatics (KaFlex) Upper Coupling, Part Number SKCP2910-1, Serial Number 0010, Manufacturer's Code 02731. Id. at ¶ 9. Plaintiffs also allege that modifications to Gary Linfoot's seat and the addition of avionics equipment under the seat by defendant L-3 COMMUNICATIONS compromised the crash worthiness of the helicopter and caused him to suffer worse injuries than he would have suffered otherwise. Id. at ¶ 11.

## II. CONCLUSIONS OF LAW

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is governed by the same legal standards as a Rule 12(b)(6) motion to dismiss. Lindsay v. Yates, 498 F.3d 434, 437 n.5 (6th Cir. 2007). For such a motion, the Court must construe the factual allegations in a light most favorable to the Plaintiffs and decide whether Plaintiffs can prove any set of facts in support of their claims that would entitle them to relief. Id. at 438. Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). Upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), but only "after adequate time discovery". Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The Federal Tort Claims Act, 28 U.S.C. § 1346(b) ("FTCA"), waives the sovereign immunity of the United States and authorizes suits against the United States, subject to several exceptions. Boyle v. United Techs. Corp., 487 U.S. 500, 511 (1988). Boyle held that the FTCA preempted state law claims against military contractors under certain conditions. Id. at 511-14, Here, Defendants invoke FTCA's statutory exception that preempts "[a]ny claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(j).

Some circuits construe "combatant activities" to include "'not only physical violence, but activities both necessary to and in direct connection with actual hostilities.'" Koohi v. United States, 976 F.2d 1328, 1333 n.5 (9th Cir. 1992) (citation omitted); see also Saleh v. Titan Corp., 580 F.3d 1, 6 (D.C. Cir. 2009) (noting that the combatant activities exception "casts an immunity net over any claim that *arises* out of combat activities," and that "[t]he arising-out-of test is a familiar one used in workmen's compensation statutes to denote *any* causal connection between the term of employment and the injury.") (emphasis in original). Although not in the context of the FTCA, the Sixth Circuit defined the similar phrase "arise under" under 28 U.S.C.§ 1331 in removal of a worker's compensation action to mean that the state worker compensation law creates the claim or the Plaintiffs' claim "necessarily depends on resolution of a substantial question of worker compensation law." Harper v. Autoalliance Int'l Inc, 392 F.3d 195, 203 (6th Cir. 2004). In the Court's view, the latter standard of a strikingly similar phrase appears to be less expansive that the District of Columbia Circuit's standard.

The District of Columbia Circuit defines the phrase "during time of war" as when, "as a result of a deliberate decision by the executive branch, United States armed forces engage in an

4

organized series of hostile encounters on a significant scale with the military forces of another nation." Koohi, 976 F.2d at 1335.

Defendants assert that the combatant activities exception bars Plaintiff's state product liability claims against federal government contractors because Plaintiff's injuries arise out of his combatant activities at the time of the accident. Defendants cite the holdings of Koohi, Saleh, Flanigan v. Westwind Techs., Inc., 648 F. Supp. 2d 994, 1007 (W.D. Tenn. 2008); and Bentzlin v. Hughes Aircraft Co., 833 F. Supp. 1486, 1492-95 (C.D. Cal. 1993). Defendants contend that Plaintiffs' claims fall into the Koohi/Bentzlin category of claims and that the Iraq war undoubtedly qualifies as a "time of war."

Further, Defendants adopt the analysis in Boyle to contend that the United States' use of military equipment for combat purposes is a "uniquely federal interest" and that if military contractors could be sued for injuries occurring during combat operations, such actions would pose a significant conflict with the federal government's interest in procuring military equipment and making combat-related decisions. Defendants assert that complex military decisions, such as the military's choice of driveshaft and decision to place avionics equipment beneath the pilot seat, the Army's strategic decisions and control of the mission should not be litigated in the courts.

Plaintiffs assert that this combat activities defense does not necessarily preempt their claims, citing Getz v. Boeing, No. C 07-6396 CW, 2009 WL 636039 (N.D. Cal. March 10, 2009) and numerous other decisions cited infra, at pp. 12-13. Plaintiffs also contend that Defendants' reliance on Koohi, Bentzlin and Flanigan is misplaced and that the combatant activities exception does not apply to the facts here. In sum, Plaintiffs contend that to warrant preemption of state law, Boyle requires Defendants to prove that: "(1) the United States approved reasonably precise

5

specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." Boyle, 487 U.S. at 512.

As to the Defendants' principal reliance on the Supreme Court's analysis of the discretionary function exception to the FTCA in Boyle, there, a United States Marine helicopter co-pilot was killed when his helicopter crashed off the coast of Virginia during a training exercise. Id. at 502. The co-pilot's father sued the helicopter manufacturer under state law, alleging defective repair and design. Id. at 503. Boyle was premised upon the discretionary function exception tin 28 U.S.C.§ 2680(a) and the Supreme Court held that:

> Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. The first two of these conditions assure that the suit is within the area where the policy of the "discretionary function" would be frustrated- i.e., they assure that the design feature in question was considered by a Government officer, and not merely by the contractor itself. The third condition is necessary because, in its absence, the displacement of state tort law would create some incentive for the manufacturer to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but withholding it would produce no liability. We adopt this provision lest our effort to protect discretionary functions perversely impede them by cutting off information highly relevant to the discretionary decision.

Id. at 512-13.

The Supreme Court deemed "the procurement of equipment by the United States as an area of uniquely federal interest," but "displacement of state law will occur only where . . . a 'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law . . . or the application of state law' would 'frustrate specific objectives of federal legislation." Id. at 507 In finding a significant conflict between that federal interest and state law tort actions, the

Court concluded, "[W]e are of the view that state law which holds Government contractors liable for design defects in military equipment does in some circumstances present a 'significant conflict' with federal policy and must be displaced." Id. at 512 (footnote omitted).

Given the Defendants' reliance on Boyle, the Court concludes that Defendants should present proof on the factors that are the predicate for Boyle's holding that: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." Id. at 512. This showing is necessary to ascertain if the facts here fit the rationale for Boyle's holding.

Defendants rely on the certain precedents under combatant activities exception to the FTCA that the District of Columbia Circuit described as "even broader than the discretionary function exception. In the latter situation, to find a conflict, one must discover a discrete discretionary governmental decision, which precludes suits based on that decision, but the former is more like a field preemption because it casts an immunity net over any claim that *arises* out of combat activities." Saleh, 580 F.3d at 6 (emphasis in original and citation omitted).

As to the Koohi and Bentzlin line of decisions, in Koohi, relatives of deceased passengers on an Iranian civilian aircraft that was shot down by a United States warship during Iran-Iraq hostilities filed an action against the manufacturers of the military's air defense system. 976 F.2d at 1329-31. Citing Boyle's analysis, the Ninth Circuit held that the plaintiffs' action against the manufacturers was preempted by the "combatant activities" exception. Id. at 1336. ("The imposition of such liability on the manufacturers . . . would create a duty of care where the combatant activities exception is intended to ensure that none exists.").

7

In Bentzlin, several Marines were killed by a missile fired from a United States aircraft during the Persian Gulf War. 833 F. Supp. at 1487. Plaintiffs, family members of the deceased Marines, alleged that a manufacturing defect caused the missile to deviate from its intended target and strike the Marines. Id. The district court noted that actions such as the plaintiffs' not only implicate the federal interests in military procurement andt in controlling military policy in war. Id. at 1492. The district court concluded that Boyle's "preemption analysis also support[ed] preemption of manufacturing defect suits arising in the context of war, regardless of the level of sophisticated technology of the allegedly defective weaponry." Id. The district court explained, "The federal interests that exist in wartime would be frustrated by allowing state tort suits against government contractors that arise from wartime deaths, even when plead [sic] as manufacturing defect claims." Id.

The Bentzlin court cited Koohi and explained that the "combatant activities" exception "for manufacturers of equipment that allegedly malfunctions during combat arises from the fact that certain federal interests implicated in war, including secrecy of wartime strategy and military morale, would be undermined by state tort action against such manufacturers." Id. at 1493. The Bentzlin court explained:

> In Koohi, the Ninth Circuit recognized three principles underlying the combatant activities exception to the FTCA. These principles are based on the premise that the objectives of tort law-deterrence, punishment, and providing a remedy to innocent victims-are inconsistent with the government's interests in combat, and thus tort law cannot be applied to government actions in combat. Similarly, the application of tort law to contractors for suits arising from combat would frustrate government combat interests.

Id.

As for deterrence, the Bentzlin court explained that "in enacting the combatant activities exception, Congress recognized that it does not want the military to 'exercise great caution at a time when bold and imaginative measures might be necessary to overcome enemy forces.'" Id. (citation omitted). Therefore, "[d]uring wartime, manufacturers similarly should not be made overly cautious in the production and transportation of weapons, since delay may lead to missed strategic opportunities and deaths of American soldiers." Id.

As to punishment of tortfeasors, the Bentzlin court observed that by enacting the combatant activities exception "Congress determined that the government should not be punished for mistakes made during war" and that the purpose of the exception also applied to government contractors because tort law was not required to punish government contractors. Id. The court explained, "The United States government is in the best position to monitor wrongful activity by contractors, either by terminating their contracts or through criminal prosecution." Id. As to the need to provide a remedy to innocent victims, the Bentzlin court stated:

> The Koohi court recognized that the "combatant activities" exception is grounded, in part, on the fact that victims of war cannot be compensated differently from each other:
>
>> War produces innumerable innocent victims of harmful conduct-on all sides. It would make little sense to single out for special compensation a few of these persons ... on the basis that they have suffered from the negligence of our military forces rather than from the overwhelming and pervasive violence which each side intentionally inflicts on the other.
>
> 976 F.2d at 1334-35. This principle applies even when the suit is against a government contractor, rather than the government itself. There can be no difference in compensation for those that die in war, even when the cause is a manufacturing defect.

Id. at 1494; see also Saleh, 580 F.3d at 7; Ibrahim v. Titan Corp., 391 F. Supp. 2d 10, 19 (D.D.C. 2005

In addition to Koohi's reasoning, the Bentzlin court also recognized other reasons for preemption.

> First, state tort suits arising from combat frustrate the federal interest in ensuring the secrecy of wartime military decision-making due to the causation issues that arise in such suits. As noted above, war can lead to the deaths and injuries of thousands of soldiers by all participants. **To prevail in a manufacturing defect suit, plaintiffs would have to establish that soldiers' deaths were caused by a manufacturing defect and not by poor strategy by the United States military, individual error, or even deliberate decisions by the military to use equipment that may be flawed but gives overall strategic advantage to the United States.** During war, the United States Defense Department may authorize the use of equipment that might not be authorized in less urgent times, or it may waive, expressly or impliedly, standard manufacturing procedures. **The balancing of the interests of fitness of design, quality of manufacture, immediacy of delivery, and thoroughness of training is essential to the conduct of war. Decisions must be made and compromises accepted in the national interest by the government and its contractors without fear of the consequences of civil liability.** Indeed, federal interests would be frustrated if discovery was required to determine whether a malfunction was caused by the United States' wartime policy or a manufacturer's shoddy workmanship.
>
> Additionally, a significant practical problem which would inevitably arise if manufacturing suits arising from combat incidents were allowed to go forward is the problem of accumulating and retaining evidence. Preserving and maintaining evidence from the scene of an accident is essential to the ability to prosecute product liability claims. In wartime, it would be inappropriate to have soldiers assembling evidence, collected from the "battlefield." Additionally, allowing such claims would require soldiers to testify for and against each other's interests, potentially undermining the unity of the forces.

Id. at 1494-95 (emphasis added and footnote omitted).

In Flanigan, another in the Koohi/Bentzlin line of decisions, a military pilot died when his Apache helicopter crashed in Afghanistan. 648 F. Supp. 2d at 995. The plaintiff sued military contractors for product liability, breach of contract, breach of warranties and loss of consortium. Id. The plaintiff alleged that the deceased pilot's helmet cables were too short and the method that the cords were connected was defective. Id. at 997. If the cords were disconnected in flight, the

pilot would be unable to utilize the instrumentation and night vision features on the helmet's shield or to communicate with anyone inside or outside the helicopter. Id. at 996. The Flanigan court held that the "action at bar [fell] into the Koohi/Bentzlin category of cases, as the systems and components alleged by the Plaintiff to have caused Flanigan's death constitute 'complex equipment acquired by the Government in its procurement process.'" Id. at 1007.

In Getz that is relied upon by Plaintiffs, military personnel and survivors of other military personnel who died in a military helicopter in Afghanistan during that conflict, sued the military contractors that were involved in the manufacture of that helicopter. 2009 WL 636039 at *1. The crash occurred when soldiers were returning to base after a cancelled combat operation. Id. Army reports revealed that "the primary cause of the accident was the sudden catastrophic failure of the number two engine," but the district court noted that "the root cause of the helicopter's engine failure has yet to be determined" Id. at **1-2. The Getz court denied the Defendants' motions for summary judgment holding that the "combat activities" defense did not preclude that action explaining, consistent with Koohi:

> As Koohi noted, the clear purpose of the combatant activities exception "is to ensure that the government will not be liable for negligent conduct by our armed forces in times of combat." Id. at 1334. Under Koohi, the Court must determine whether imposing liability on the manufacturers and designers of the subject helicopter would "create a duty of care where the combatant activities exception is intended to ensure that none exists." Id. at 1337. To make this determination, the Court examines the three principles underlying the combatant activities exception identified in Koohi.
>
> First, the Court must analyze whether holding a defendant liable in this case would "make the actor more careful." Id. at 1334. In Koohi, the court noted that Congress did not want servicemen to worry about tort liability when "making life or death decisions in the midst of combat." Id. at 1335. **Conversely, here, designing and manufacturing an Army combat helicopter should be exercised with great caution so as to provide non-defective products for its intended users.**

> Second, the Court must analyze whether tort law would "secure justice" and provide a "remedy for the innocent victim of wrongful conduct." Id. In Koohi, the court emphasized that war "produces innumerable innocent victims of harmful conduct-on all sides," and that it would not make sense to distinguish between victims of negligent and intentional acts by military forces when deciding whether to provide a tort remedy. Id. **Here, the military personnel killed were also "innocent victims," but they were not victims of the type of "harmful conduct" contemplated in Koohi. The harmful conduct complained of here arises from an allegedly defective product designed to transport and protect military personnel, not from weapons systems that fired and killed enemy citizens during combat.**
>
> Third, the Court must analyze whether the "punitive aspect" of tort law would be furthered by holding Defendants liable. Id. The court in Koohi noted that "it is unlikely that there are many Americans who would favor punishing our servicemen for injuring members of the enemy military or civilian population as a result of actions taken in order to preserve their own lives and limbs." Id. **In contrast, it is unlikely that many Americans would not want to punish companies that provided defective products to the military, when the use of those products resulted in severe injuries and death to their own soldiers.** Therefore, none of the principles underlying the FTCA's combatant activities exception applies to the circumstances of this case.

Id. at * 5 (emphasis added and footnote omitted).

The Court deems Getz the better reasoned view that considers whether the facts of the incident at issue fit the reasons and purposes for the "combat activities" exception. There, the district court concluded that the combat exception may not apply to preempt state law claims of soldiers and survivors of soldiers who died in a helicopter crash in Afghanistan. This Court concludes that Koohi and Bentzlin are distinguishable because those injuries resulted from military firing. Thus, the military personnel's use of force in those cases would clearly qualify for the "combat activities" defense. Conversely, here, the Court lacks the necessary facts on whether the Koohi rationale applies.

This fact based approach is consistent with Boyle, upon which the Defendants rely. Boyle did not take a categorical immunity approach to preemption and clearly stated that: "[W]e are of

the view that state law which holds Government contractors liable for design defects in military equipment does **in some circumstances** present a 'significant conflict' with federal policy and must be displaced." 487 U.S. at 512 (emphasis added). Boyle and Koohi require an examination of the facts of each case to determine if preemption applies. In this Court's view, the preemption defense cannot be decided on the current state of the factual record that is limited to the pleadings.

As to Plaintiffs' other contentions, the Court concludes, however, that Plaintiffs erroneously rely on decisions involving military contractors that provide services rather than manufacturing products[1]. Plaintiffs next argue that "[c]ontrol by the military is also critical in the analysis of the [combatant activities] exception." (Docket Entry No. 72 at 5). However, the issue of "control" is relevant only in service contractor cases where the defendants are not acting under the direct control of the military during actual combat operations. See Harris, 618 F. Supp. 2d at 434; Saleh, 580 F.3d at 9 ("During wartime, where a private service contractor is integrated into combatant activities over which the military retains command authority, a tort claim arising out of the contractor's engagement in such activities shall be preempted."). Here, Plaintiffs' claims

---

[1] Harris v. Kellogg, Brown & Root Servs., Inc., 618 F. Supp. 2d 400 (W.D. Pa. 2009) (where soldier was electrocuted while showering, plaintiffs brought negligence claim against private military contractor that provided operations and maintenance services at the base); Shimari v. CACI Premier Tech., Inc., 657 F. Supp. 2d 700 (E.D. Va. 2009) (claims based on abuse by government contractor interrogators in an Iraqi prison); Lessin v. Kellogg Brown & Root, No. 05-1853, 2006 WL 3940556 (S.D. Tex. June 12, 2006) (claim alleging that defendant was negligent in inspecting, maintaining, and repairing the truck that injured the soldier while providing military escort to commercial convoy, and in supervising the driver who was operating the truck); Fisher v. Halliburton, 390 F. Supp. 2d 610 (S.D. Tex. 2005) (plaintiff truck drivers' claims that defendant used them as a decoy convoy during delivery of fuel that led to them being attacked). Unlike Koohi, Bentzlin and Flanigan, none of the cases cited by Plaintiffs involves claims against a manufacturer of military equipment used during combat. See Flanigan, 648 F. Supp. 2d at 1006 (distinguishing cases cited by plaintiff as not involving "alleged manufacturing or design defects"); Harris, 618 F. Supp. 2d 434 ("The decisions of Koohi and Bentzlin are distinguishable from the instant matter as both involved products liability claims against manufacturers resulting from actual combat operations.").

involve military equipment that was procured and utilized in the context of war. Thus, the issue of control is not implicated under the facts here. Plaintiffs also argue that "where no wartime secrets exist and the timely production of weapons is not delayed, the combatant activities exception should not apply," (Docket Entry No. 72 at 7) (citing Rodriguez v. General Dynamics Armament and Tech. Products, Inc., No. 08-189, 2010 WL 932364 (D. Haw. Mar. 11, 2010)). Rodriguez, however, is factually inapposite as there a soldier was killed by a defective mortar during a training exercise in Hawaii.

Accordingly, the Court concludes that whether Plaintiffs' claims are preempted under the combatant activities exception to the FTCA cannot be decided on the Defendants' motions for judgment on the pleadings (Docket Entry Nos. 60 and 68).

As to MDHC's and Kamatics's motions for summary judgment based upon Tennessee's statute of repose, under Tenn. Code Ann. § 29-28-103(a), a products liability action "must be brought within ten (10) years from the date on which the product was first purchased for use or consumption." See also Wyatt v. A-Best Prods. Co., 924 S.W.2d 98, 102 (Tenn. Ct. App. 1995). The TPLA statute of repose is part of the substantive law of Tennessee. Montgomery v. Wyeth, 540 F. Supp. 2d 933, 942 (E.D. Tenn. 2008) (citing Cronin v.Howe, 906 S.W.2d 910 (Tenn. 1995)).

According to Defendants, the driveshaft was manufactured in 1990, and was first sold for use no later than July of 1991, when MDHC sold the driveshaft to the U.S. Army, approximately eighteen years before Plaintiffs filed this action. See Mormino Aff., at ¶ 7; Borowitz Aff., at ¶¶ 4-6. Kamatics has had no contact with the driveshaft since it shipped to MDHC. Mormino Aff., at

¶ 8. Kamatics' only connection to the aircraft and to this case is the sale of the driveshaft to MDHC. Mormino Aff., at ¶¶ 8-10.

Here, given the factual allegations relating to the cause of the injuries, the Court concludes that further proof is also necessary on whether under Tennessee's choice of law principles, Hattaway v. McKinley, 830 S. W. 2d 53, 59-60 (Tenn. 1992), Tennessee substantive law or the law of a different forum should apply to Plaintiffs' claims. Thus, MDHC's and Kamatics's motions for summary judgment should be denied without prejudice to renew after merits discovery.

An appropriate Order is filed herewith.

**ENTERED** this the 9th day of November, 2010.

WILLIAM J. HAYNES, JR.
United States District Judge