UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GARY LINFOOT, and wife MARI LYN LINFOOT, and GREGORY COOPER<br><br>Plaintiffs,<br><br>v.<br><br>MCDONNELL DOUGLAS HELICOPTER COMPANY, L-3 COMMUNICATIONS CORPORATION, KAMATICS CORPORATION, and DYNCORP INTERNATIONAL LLC<br><br>Defendants. | No. 3:09-cv-639<br><br>Judge Sharp |

## MEMORANDUM

Pending before the Court is Defendant McDonnell Douglas Helicopter Company's ("MDHC") Renewed Motion for Summary Judgment based on the Tennessee Statute of Repose (Docket No. 111).[1] For the reasons set forth below, this Motion will be denied.

### I. SUMMARY OF THE FACTS

In the final minutes of May 31, 2008, an AH-6M model helicopter (the "subject helicopter"),[2] piloted by Plaintiff Gary Linfoot, a Chief Warrant Officer (CW4) in the United States Army and member of the 160th Special Operations Aviation Regiment (SOAR), and his

---

[1] MDHC also filed a Motion to Ascertain Status (Docket No. 197), which is moot given this decision. Additionally, the record reflects a pending Motion to Dismiss filed by L-3 Communications Corporation (Docket No. 177), which is moot in light of the Parties' stipulation of dismissal of all claims asserted by Plaintiffs against L-3 Communications Corporation with prejudice (Docket No. 198).

[2] United States Army tail number 23649, Manufacturer Serial Number 81-23649.

co-pilot Plaintiff Gregory Cooper, crashed during a mission south of Baghdad, Iraq. Plaintiffs allege the accident was caused by failure of a component of the engine-to-transmission driveshaft, which in turn caused an immediate loss of power to the helicopter's rotors. The impact of the crash was aggravated by the failure of the crush box beneath the pilot's seat to yield and effectively absorb the shock of the hard landing. The crush box had been filled with avionics equipment during a prior modification of the aircraft.

The subject helicopter had been "substantially rebuilt" a number of times since it was manufactured and delivered to the Army in 1981 by MDHC's predecessor, Hughes Helicopter (Docket No. 128 at 1). It had been based on the Fort Campbell, Kentucky airfield since at least September 1982.

As a result of the accident, Plaintiffs Gary Linfoot and Gregory Cooper suffered severe injuries, including spinal trauma, which required multiple surgeries. Mr. Linfoot's injuries left him permanently paralyzed. Mari Lyn Linfoot, Mr. Linfoot's wife, is also a Plaintiff in this action. Their Fourth Amended Complaint alleges claims of negligence, violation of the Tennessee Products Liability Act, and breach of warranty (Docket No. 138 at 4-7).[3]

Movant in the current matter before the Court is Defendant MDHC, a Delaware corporation with its principle place of business in Illinois, which manufactured the subject helicopter. DynCorp, a Delaware corporation with its principle place of business in Virginia, is also a Defendant by virtue of its role as a Government contractor charged with maintaining and servicing the helicopter. The Parties dispute what role Defendants and other actors played in

---

[3] Plaintiffs have filed four Amended Complaints over the course of the proceedings, updating the identities of Defendants and providing more specificity regarding the helicopter and its component parts as the Parties accrue information during the discovery process.

subsequent modifications made to the subject helicopter since it was originally delivered to the Army, including modifications related to the Mission Enhanced Little Bird ("MELB") program.[4]

## II.     LEGAL ANALYSIS

A party may obtain summary judgment if the evidence establishes there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). The Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in his or her favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the nonmoving party must rely on more than "[c]onclusory assertions, supported only by Plaintiff's own opinions." Arendale v. City of Memphis, 519 F.3d 587, 605 (6th Cir. 2008). Rather, Plaintiffs must "set out specific facts showing a genuine issue for trial." Harvey v. Campbell County, Tenn., 453 Fed. Appx. 557, 561 (6th Cir. 2011).

### A. Procedural History

MDHC first filed a Motion for Summary Judgment based on the Tennessee Statute of Repose on March 3, 2010, before the initiation of formal discovery (Docket No. 62).[5] Plaintiffs' Response in Opposition asserted that genuine issues of material fact remained (Docket No. 84). The Army had not yet responded to the Parties' Joint *Touhy* Request of October 8, 2009, nor had

---

[4] A series of light helicopters used by the Army in special operations.

[5] Former Defendant Kamatics Corporation also filed a Motion for Summary Judgment arguing the claim was barred by the ten-year statute of repose in the Tennessee Products Liability Act (Docket No. 63). However, Kamatics Corporation has since been dismissed from the action pursuant to Plaintiffs' Stipulation of Voluntary Dismissal of Action Against Defendant Kamatics Corporation filed by the Parties on September 19, 2014 (Docket Nos. 190 & 192).

Parties had the opportunity to inspect the wreckage (Docket No. 84). See Rimmer v. Holder, 700 F.3d 246, 262 (6th Cir. 2012) (explaining a *Touhy* request is "a common tool for obtaining federal documents" during discovery). Also, for the first time, Plaintiffs introduced a choice of law question and claimed that under the Second Restatement's "most significant relationship test" adopted by Tennessee, other jurisdictions had more significant connections to the Parties and the dispute.

The Court denied MDHC's Motion for Summary Judgment without prejudice, concluding that further proof was required regarding "whether under Tennessee's choice of law principles … Tennessee substantive law or the law or a different forum should apply to Plaintiff's claims." (Docket No. 91 at 15). Shortly after, the Court granted Plaintiff's Unopposed Motion to Stay Discovery (Docket No. 93) pending the Army's fulfillment of the Parties' joint *Touhy* request (Docket No. 96). When the Army had substantially completed its response to the *Touhy* request, the Court lifted the stay and set a discovery deadline for 120 days later (Docket No. 184). This deadline has since been continued twice on joint motions of the Parties due to complications in obtaining further discovery from the Army (Docket Nos. 196 & 201).

MDHC filed a renewed Motion for Summary Judgment on March 28, 2012, and once again asserted that all Plaintiffs' claims against it were extinguished by the ten-year statute of repose in the Tennessee Products Liability Act (TPLA). See TENN. CODE ANN. § 29-28-103(3) (West 2014). MDHC noted that Plaintiffs themselves invoked the TPLA and, even if they had not, Tennessee had the most significant relationship under the State's choice of law regime.

Plaintiffs responded that the statute of repose posed no obstacle to their claims because modifications to the subject helicopter after 1999 rendered it a "new product" for the purposes of

the TPLA. In any event, Tennessee was not the State with the most significant relationship to the dispute. Instead, Arizona, where Plaintiffs claim MDHC designed, developed, and tested modifications that were later applied to the subject helicopter pursuant to the MELB program, or Kentucky, where Plaintiffs' regiment is headquartered and the subject helicopter was based, had more significant relationships.

After the Army produced further information regarding modifications to the subject helicopter, the Parties deposed relevant witnesses and made supplemental filings in 2014 (Docket Nos. 162, 163, 169, 173). Plaintiffs had argued in their Response in Opposition to MDHC's Renewed Motion for Summary Judgment that either the substantive law of Arizona or Kentucky should apply. However, in later filings, Plaintiffs focused on the law of Arizona as the State where MDHC, as a government contractor, performed tests for the MELB program, developing the series of light helicopters of which the AH-6M is one variant.

Questions of fact abound throughout these filings and their accompanying exhibits, including the level of control MDHC, the Army, and other actors exercised over the MELB program and the relevance of these activities to the subject helicopter and the accident. However, for the purpose of the Motions currently before it, the Court need only consider this information insofar as it is relevant to its choice of law inquiry, which is fairly limited.

**B. Choice of Law**

This Court's jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332, thus the Court applies the procedural law of the forum state, including its choice of law rules, to determine the governing substantive law. See e.g., Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496-97 (1941); Westfield Ins. Co. v. Tech Dry, Inc., 336 F.3d 503, 506 (6th Cir. 2003); AutoZone, Inc. v. Glidden Co., 737

F. Supp. 2d 936, 941 (W.D. Tenn. 2010). Tennessee has adopted the Second Restatement approach with respect to tort actions, which requires a court to apply the "law of the state where the injury occurred … unless, with respect to the particular issue, some other state has a more significant relationship … to the occurrence and the parties." Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 146 & 175 (1971)).

The Tennessee statute of repose is substantive, see Bramblett v. Nick Carter's Aircraft Engines, Inc., 1991 WL 12284, at *3-4 (Tenn. Ct. App. Feb. 7, 1991), therefore the Court engages in a choice of law inquiry if the statute conflicts with the approach taken by another State with a significant relationship to the litigation. See Govt. Emps. Ins. Co. v. Bloodworth, 2007 WL 1966022, at *29 (Tenn. Ct. App. June 29, 2007) (internal citations omitted) ("A conflict between the laws of the states at issue is a necessary predicate to deciding which state's (or states') laws should govern the various issues presented in the case."). If the same result would be reached irrespective of which jurisdictions' law was applied, a "false conflict" exists and the choice of law analysis is not triggered. Id. at 30.

In this case, a conflict exists between Tennessee, which is Plaintiffs' residence, and the forum of which they originally availed themselves, and Kentucky, where Plaintiffs' regiment and the subject helicopter have been based for over thirty years.

The TPLA's ten-year statute of repose requires that "[a]ny action against a manufacturer or seller of a product for injury to person or property caused by its defective or unreasonably dangerous condition must be brought … within ten (10) years from the date on which the product was first purchased for use or consumption." TENN. CODE ANN. § 29-28-103(a) (West 2014). The statute incorporates a broad definition of "product liability action" and bars accrual of any

cause of action based on personal injury resulting from a product first sold more than ten years prior. See e.g., Winningham v. Ciba Geigy Corp., 1998 WL 432472, at *2 (6th Cir. July 14, 1998); Greene v. Brown & Williamson Tobacco Corp., 72 F.Supp.2d 882, 886-87 (W.D. Tenn. 1999).

Kentucky's approach to products liability is "conceptually similar to a statute of repose" but does not impose an absolute time limitation to accrual of a claim. Smith v. Louis Berkman Co., 894 F. Supp. 1084, 1091 (W.D. Ky. 1995); see also Bramblett v. AVCO Corp., 1994 WL 110185, at *1 (Tenn. Ct. App. July 25, 1994). Instead, Kentucky's product liability statute creates a presumption "until rebutted by a preponderance of the evidence to the contrary, that the subject product was not defective if the injury … occurred either more than five (5) years after the date of sale to the first consumer or more than eight (8) years after the date of manufacture." KY. REV. STAT. ANN. § 411.310(1) (West 2014). Thus, the burden lies with the plaintiff to show the product at issue is defective. See Leslie v. Cincinnati Sub-Zero Products, Inc., 961 S.W.2d 799, 803 (Ky. Ct. App. 1998).

Having identified a conflict of law, the Court now turns to the choice of law principles set forth in the Second Restatement to determine which State has the "most significant relationship" in this case. The Court considers: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in determination and application of the law to be applied." Hataway, 830 S.W.2d at 59 n.3 (quoting RESTATEMENT (SECOND) § 6).

7

In pursuing this inquiry, the Court considers the following contacts: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Id. (quoting RESTATEMENT (SECOND) § 145(2)).

MDHC claims that the factors indicate Tennessee has the most significant relationship to the Parties and the accident. Though Fort Campbell straddles the border of Tennessee and Kentucky, Plaintiffs are Tennessee residents who availed themselves of this forum by bringing a TPLA claim to a court in Tennessee. MDHC also notes that the first mention of an alternative law came a year into the litigation, when Plaintiffs responded to MDHC's first Motion for Summary Judgment (Docket No. 84 at 5-6). For these reasons, Tennessee substantive law should apply, including the TPLA's ten-year statute of repose, which bars all of Plaintiffs' claims against MDHC.

Plaintiffs assert that either Arizona or Kentucky has a more significant relationship to the Parties and the dispute than Tennessee. Tennessee's only connection is Plaintiffs' residence, which is not dispositive to the choice of law question. Instead, the law of Arizona, where "MDHC designed, developed, tested, validated and verified the new AH-6M helicopter" (Docket No. 123 at 10), or the law of Kentucky, where the 160th SOAR is headquartered and the subject helicopter was based, should apply.

Having reviewed the Parties' arguments and the relevant evidence, the Court considers the factors set forth in the Second Restatement. As regards the first factor, neither Party asserts that the Court should apply the substantive law of Iraq, though it is the situs of the accident. See Johansen v. Presley, 977 F. Supp. 2d 871, 881 (W.D. Tenn. 2013) ("None of the parties argue for

the application of Swedish law. 'A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing.' … The court is therefore under no obligation to apply Swedish law.") (quoting FED R. CIV. P. 44.1).

As for the second factor, the Court is not persuaded that Arizona is the site of the conduct causing the injury. Though it was a test site of the MELB program, by the Court's estimation, Kentucky's connection to the relevant conduct is greater. The evidence indicates that alterations to the subject helicopter specifically, including the final modifications from a "J" model to the final "M" model, occurred in Kentucky, as did routine maintenance (Docket No. 126-25 at 2). If, as Plaintiffs claim, the accident was caused by design or manufacturing defects,[6] or negligent maintenance of the subject helicopter and its component parts, the evidence indicates such defects or negligence occurred in Kentucky.

Nor does the Court give predominance to Plaintiffs' residence or the inclusion of a Tennessee statutory claim. These considerations are not dispositive and, in the Courts view, are comparatively minor when judged against the panoply of choice of law factors. See Eastman v. Pope, 2011 WL 1323021, at *5 (M.D. Tenn. April 5, 2011) (noting plaintiffs' residence in Tennessee "standing alone, is not enough to show that Tennessee has a 'more significant relationship' with the issue of damages" and that "application of Kentucky law will not frustrate Tennessee's interest in seeing its citizens fully compensated for their injuries"); Montgomery v. Wyeth, 540 F. Supp. 2d 933, 945 (E.D. Tenn. 2008) (noting that "the exclusive use of Tennessee law in pleadings, briefs, and depositions is not dispositive" to the issue of choice of law, though it does "relate to principles in the Restatement").

---

[6] Plaintiffs originally included the driveshaft manufactured by former Defendant Kamatics in their products liability cause of action, but have since abandoned this claim against Kamatics and MDHC. (Docket No. 191).

The Court finds the fourth factor most instructive and its review indicates the relationship between the Parties is centered in Kentucky. As previously noted, Plaintiffs' regiment and the Fort Campbell airfield are located on the Kentucky side of the base (Docket No. 126-25). See In re Air Crash Disaster at Gander, Newfoundland on December 12, 1985, 660 F. Supp. 1202, 1207 n.3 (W.D. Ky. 1987) ("The military airfield at Fort Campbell is wholly within the boundaries of the state of Kentucky."). The subject helicopter was, in its original form, delivered to Kentucky no later than 1982 and has been based there for over thirty years. Though the helicopter underwent multiple modifications since that time, all appear to have occurred in Kentucky. See Siroonian v. Textron, 844 F.2d 289, 292 (5th Cir. 1988) (identifying Kentucky as the "center of the relationship," in addition to the situs of the accident, between decedent pilot, stationed at Fort Campbell and residing in Tennessee, and defendant helicopter manufacturer because the airfield was the "military station to which both the helicopter and [decedent] were assigned"). The Court concludes that Kentucky, as the location of the subject helicopter, its modifications, and Plaintiffs' regiment, was the center of the Parties' relationship.

The Court has duly applied these factors to the considerations listed in Section 6 of the Second Restatement and finds no incongruity. The relevant policy of Tennessee, the forum state, is to limit the number of products liability actions and thereby reduce costs associated with litigation and product liability insurance. See Greene, 72 F. Supp. 2d at 886. Kentucky's rebuttable presumption that a product is not defective similarly limits products liability actions and related costs to the cases where a plaintiff can show by a preponderance of the evidence that the product was in fact defective. See KY. REV. STAT. ANN. § 411.310(1) (West 2014).

By avoiding an absolute bar, however, Kentucky furthers an additional policy effected through its products liability laws: protecting Kentucky citizens and those injured within its

boundaries. Rutherford v. Goodyear Tire and Rubber Co., 943 F. Supp. 789, 792 (W.D. Ky. 1996) (rejecting the notion that Kentucky has an interest in regulating products assembled in Kentucky if they do not cause injury there); see also Monsanto Co. v. Reed, 950 S.W.2d 811, 814 (Ky. 1997) (noting that products liability actions brought under theories of tort, negligence, and breach of warranty share the same central purpose: "recovery of damages for injury or property damage caused by a product"). This policy is also relevant in the current dispute, though Plaintiffs are Tennessee residents. Federal courts faced with similar scenarios have noted Kentucky's "interest in actions of military personnel based within Kentucky" whether or not they reside in the State, and the "real and substantial economic and social impact on the area of Kentucky surrounding Fort Campbell through the families and soldiers stationed at that facility." In re Air Crash Disaster, 660 F.Supp. at 1215-16.

MDHC emphasizes that Plaintiffs availed themselves of Tennessee and only introduced the choice of law question later in the proceedings. While this does relate to the justified expectations of the Parties, it is not dispositive. See Montgomery, 540 F.Supp.2d at 945. As explained above, the Court believes the application of Kentucky substantive law does not harm Tennessee policy and, in fact, furthers public policy goals of Kentucky that are highly relevant to military personnel based at Fort Campbell. Because the choice of law question arose relatively early in the course of the litigation and before significant discovery had been undertaken, the Court is confident the Parties' justified expectations are duly protected and that Kentucky law can be applied with relative ease.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Kentucky has the most significant relationship to the Parties and the accident at issue. As such, Kentucky substantive law applies to this dispute and the TPLA's ten-year statute of repose poses no bar to Plaintiffs' claims. Defendant MDHC's Motion to Ascertain the Status of the Renewed Motion for Summary Judgment based on the Tennessee Statute of Repose (Docket No. 197) will be granted and the subject motion, MDHC's Renewed Motion for Summary Judgment based on the Tennessee Statute of Repose (Docket No. 111), will be denied.

Defendant L-3 Communication Corp has been dismissed from the action and its Motion to Dismiss (Docket No. 177) will be denied as moot.

An appropriate Order will enter.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE